McDONALD, J.
**175 This certified appeal requires us to construe General Statutes § 52-593a,[1] a *1132 remedial savings statute that operates to render an action timely commenced as long as process is delivered to a marshal prior to the expiration of the applicable statute of limitations and served within thirty days. The defendants, three groups of individuals and entities involved in the 2007 involuntary psychiatric hospitalization of the plaintiff, John Doe,[2] appeal from the judgment of the Appellate Court, which reversed the trial court's rendering of summary judgment in their favor. They claim that the Appellate Court improperly concluded that (1) the requirement in § 52-593a(b) that a marshal shall endorse under oath on the return of service the date on which process was delivered to him or her, is directory, rather than mandatory, and (2) there existed a genuine issue of material fact concerning whether the plaintiff had delivered the process to a marshal within the applicable limitation period. We conclude that § 52-593a(b) **176 does not preclude a plaintiff from proving timely delivery of process to the marshal by means other than the statutorily prescribed method. We further conclude that there existed a genuine issue of material fact as to whether timely delivery was made. Accordingly, we affirm the judgment of the Appellate Court.
The following facts and procedural history are relevant to this appeal. The plaintiff was hospitalized involuntarily for psychiatric observation in May and June, 2007. Subsequent to his release, he brought this action against multiple individuals and entities, alleging various wrongful conduct in connection with the hospitalization and the events preceding it. The defendants named in the complaint include (1) a therapist who previously had treated the plaintiff and the therapist's employer (medical defendants), (2) the town of West Hartford, its chief of police and certain members of its police department in their official and individual capacities (town defendants), and (3) Hartford Hospital, the Institute of Living and various psychiatric professionals who were involved in the plaintiff's commitment and treatment (hospital defendants).[3] It is undisputed that the allegedly wrongful acts at issue occurred between May 22 and June 8, 2007, and that, for purposes of this appeal, a three year statute of limitations applied to the plaintiff's claims.
The plaintiff's former counsel, A. Paul Spinella, finalized a complaint and executed a summons on May 19, 2010. The defendants were served with these documents by State Marshal John R. Griffin on June 9, 2010, a date that was one or more days beyond the expiration **177 of the relevant limitation period, depending on the particular wrongful act alleged.[4] More than *1133 three years later, the hospital defendants filed a motion for summary judgment, claiming, inter alia, that the plaintiff's claims against them were time barred. They attached as an exhibit Griffin's return of service indicating that service had occurred on June 9, 2010. The town defendants filed a similar motion as to certain claims, also appending Griffin's return of service. The plaintiff opposed these motions, arguing, inter alia, that the claims at issue were not time barred because the summons and complaint had been delivered to Griffin on May 20, 2010, thereby satisfying the requirements of § 52-593a. See footnote 1 of this opinion. Because Griffin's return of service did not include an endorsement of the date of delivery as required by § 52-593a(b), the plaintiff instead included an affidavit executed by Griffin wherein Griffin attested that the summons and complaint had been delivered to him on May 20, 2010.
Thereafter, the defendants deposed Griffin, which revealed that he had no independent memory or record of the date on which he had received the summons and complaint from Spinella. Rather, upon request, he simply had executed an affidavit prepared by Spinella, assuming that the delivery date identified therein was correct. Subsequent to the deposition, the hospital defendants and the town defendants filed motions to strike the paragraph of Griffin's affidavit in which he averred that the summons and complaint had been delivered to him on May 20, 2010. Therein, they argued that Griffin's averment was not based on his personal knowledge but, rather, on inadmissible hearsay. The **178 trial court denied the motions to strike,[5] but indicated, nevertheless, that it would disregard Griffin's affidavit when ruling on the summary judgment motions. The court further allowed that the plaintiff could submit an affidavit from Spinella in lieu of Griffin's affidavit, and that the defendants would be permitted sixty days in which to depose Spinella in regard to the facts and circumstances underlying his averments in that affidavit.
Contemporaneous with the trial court's ruling, Spinella signed an affidavit in which he attested that, at the time he represented the plaintiff in this matter, he had been "acutely aware of the statute of limitations," he had executed the summons with the complaint attached on May 19, 2010, and Griffin had retrieved those documents from Spinella's law office on May 20, 2010. After deposing Spinella, the hospital defendants and the town defendants filed motions to strike his affidavit and supplemental memoranda in support of their earlier motions for summary judgment, providing to the court a transcript of the deposition.[6] They contended that Spinella's affidavit should be stricken because his deposition testimony had revealed that it was based on inadmissible hearsay and speculation, was "self-serving" and lacked credibility. The plaintiff filed a response, claiming that Spinella's deposition testimony demonstrated that he had a clear and detailed personal recollection of the relevant *1134 events. In a memorandum of decision, the trial court, after reviewing the **179 deposition testimony, concluded that Spinella's statement that the summons and complaint were retrieved by Griffin on May 20, 2010, was based on hearsay rather than personal knowledge and, therefore, would be disregarded for purposes of deciding the summary judgment motions. Specifically, it reasoned, Spinella did not personally deliver the process to Griffin or see Griffin retrieve it; rather, he merely had received oral confirmation from third parties that the process had been picked up. In light of that ruling, the medical defendants sought and received permission to move for summary judgment on the basis that the claims against them, too, were time barred.
The trial court granted all of the defendants' motions for summary judgment, in three separate memoranda of decision, concluding in each that the claims at issue were time barred. Specifically, it reasoned, the plaintiff had not met his burden of producing admissible evidence sufficient to create a genuine issue of material fact as to whether the summons and complaint had been delivered to Griffin prior to the expiration of the statute of limitations, such that § 52-593a would apply to save the causes of action. The plaintiff's appeal to the Appellate Court followed.
The trial court, in a subsequent articulation, reiterated that portions of Spinella's deposition testimony constituted hearsay evidence that would be inadmissible at trial and that Spinella had not personally witnessed Griffin retrieving the process. Otherwise, the court reasoned, Spinella had no actual recollection of the events in question occurring on the specific date of May 20, 2010, the day he had identified as the date of delivery in his affidavit. Moreover, according to the court, in light of various surrounding circumstances, the more reasonable inference was that delivery was untimely. In the court's view, Spinella's deposition testimony was "loose and equivocal" and, therefore, lacked **180 probative value. "In sum," the court concluded, "none of the proffered evidence was sufficient to satisfy the plaintiff's burden of demonstrating that the requirements of ... § 52-593a had been satisfied."
The Appellate Court reversed the judgment of the trial court, holding that Spinella's deposition testimony, even without taking into account the portions identified as hearsay, sufficiently had raised a genuine issue of material fact as to whether the summons and complaint were delivered to Griffin on May 20, 2010. Doe v. West Hartford , 168 Conn. App. 354, 375-76, 147 A.3d 1083 (2016). The Appellate Court further rejected the defendants' claim, raised as an alternative ground for affirmance, that Griffin's failure to certify, on the return of service, the date on which the documents were delivered to him was fatal to the plaintiff's appeal because such certification is a mandatory prerequisite to invoking the remedial protection of § 52-593a.[7] Id., at 377-79, 147 A.3d 1083. This certified appeal followed.[8]
*1135 The defendants claim that the Appellate Court improperly reversed the trial court's judgment in their favor because the requirement of § 52-593a(b) that a **181 marshal endorse, on the return of service, the date on which process was delivered to him or her, is a mandatory prerequisite in order to invoke the protection of the statute, and Griffin failed to fulfill that requirement. They claim further, in the alternative, that the admissible evidence before the trial court was insufficient to create a genuine issue of material fact as to whether the summons and complaint were delivered to Griffin prior to the expiration of the statute of limitations. We will address these claims in turn.
I
The defendants claim that the trial court's judgment in their favor should be affirmed because Griffin failed to comply with the endorsement requirement of § 52-593a(b). According to the defendants, that requirement is a mandatory prerequisite for the plaintiff to invoke the remedial extension of the statute of limitations afforded by subsection (a) of the statute. We are not persuaded.
The defendants' claim presents an issue of statutory construction. When we are called upon to construe a statute that is implicated by a summary judgment motion, our review is plenary. See Sokaitis v. Bakaysa , 293 Conn. 17, 22, 975 A.2d 51 (2009). "In determining the meaning of a statute, we look first to the text of the statute and its relationship to other statutes. General Statutes § 1-2z.[9] If the text of the statute is not plain and **182 unambiguous, we may consider extratextual sources of information such as the statute's legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter .... Our fundamental objective is to ascertain the legislature's intent." (Citation omitted; footnote added; internal quotation marks omitted.) Chestnut Point Realty, LLC v. East Windsor , 324 Conn. 528, 533, 153 A.3d 636 (2017).
When interpreting § 52-593a, we further bear in mind that it "is a remedial provision that allows the salvage of an [action] that otherwise may be lost due to the passage of time." (Internal quotation marks omitted.) Dorry v. Garden , 313 Conn. 516, 533, 98 A.3d 55 (2014). It is established that "remedial statutes must be afforded a liberal construction in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.)
*1136 Id. ; see also Isaac v. Mount Sinai Hospital , 210 Conn. 721, 733, 557 A.2d 116 (1989) (observing that "broad and liberal purpose [of a savings statute] is not to be frittered away by any narrow construction" [internal quotation marks omitted] ). In short, a remedial statute "should be so construed as to advance the remedy rather than to retard it." (Internal quotation marks omitted.) Johnson v. Wheeler , 108 Conn. 484, 486, 143 A. 898 (1928). Finally, "Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court.... [Thus] [o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy [when] that can be brought about with due regard to necessary rules of procedure." (Citations omitted; internal quotation marks omitted.)
**183 Fedus v. Planning &Zoning Commission , 278 Conn. 751, 769-70, 900 A.2d 1 (2006).
Subsection(a) of § 52-593a provides in relevant part that "a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery." Pursuant to subsection(b) of § 52-593a, "[i]n any such case, the officer making service shall endorse under oath on such officer's return the date of delivery of the process to such officer for service in accordance with this section."
As this court previously has explained, § 52-593a"was intended to address the problem that arises when a marshal receives a writ from counsel close to the expiration of the statute of limitations ...." Tayco Corp. v. Planning & Zoning Commission , 294 Conn. 673, 682, 986 A.2d 290 (2010). The statute's purpose is "to prevent a party from losing the right to a cause of action because of untimely service on the part of the marshal by giving the marshal additional time in which to effect proper service on the party in question." (Emphasis in original.) Id. To invoke the protection of the statute, a party "must deliver the writ to the marshal within the applicable statute of limitations." Id. In enacting § 52-593a, "the legislature recognized the injustice that might result if a [marshal], through inattention, oversight or lack of time, failed to serve papers in time." (Internal quotation marks omitted.) Id., at 683, 986 A.2d 290. "By allowing the marshal additional time in which to locate and serve a party, § 52-593a provides a method for ensuring correct service of process without infringing on a litigant's ability to timely file even when he or she uses the entire amount of time allotted to bring an action pursuant to the applicable statute of limitations." (Emphasis in original.) Id., at 685, 986 A.2d 290.
**184 The defendants argue that, to invoke the protections of § 52-593a(a), strict compliance with the certification requirement of § 52-593 (b) is necessary. In the defendants' view, the legislature's use of the word "shall," in delineating this requirement, is unequivocal evidence of its intent that the requirement is mandatory, rather than directory. Moreover, the defendants contend, the Appellate Court's conclusion to the contrary ignored subsection (b) of the statute and rendered it "meaningless." According to the defendants, the "evidentiary morass with which [the trial court] was confronted four years after the fact" was exactly the type of situation that the legislature, in enacting subsection (b), must have intended to avoid. The plaintiff responds that, despite the legislature's use of the word "shall," the Appellate Court *1137 properly interpreted subsection (b), consistent with the approach employed in numerous decisions of this court, to be directory rather than mandatory. We agree with the plaintiff.
Contrary to the defendants' assertions, the legislature's use of the word "shall," considered in conjunction with the plain meaning rule, is not dispositive of the question of whether a statutory requirement is mandatory or directory. "Although we generally will not look for interpretative guidance beyond the language of the statute when the words of that statute are plain and unambiguous ... our past decisions have indicated that the use of the word shall, though significant, does not invariably create a mandatory duty.... Indeed, we frequently have found statutory duties to be directory, notwithstanding the legislature's use of facially obligatory language such as shall or must.... We therefore look to other relevant considerations, beyond the legislature's use of the term shall, to ascertain the meaning of the statute." (Citations omitted; footnote omitted; internal quotation marks omitted.)
**185 ElectricalContractors, Inc. v. Ins. Co. of the State of Pennsylvania , 314 Conn. 749, 757-58, 104 A.3d 713 (2014).
"Our prior cases have looked to a number of factors in determining whether such requirements are mandatory or directory. These include: (1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether the requirement at issue relates to a matter of substance or one of convenience; (4) whether the legislative history, the circumstances surrounding the statute's enactment and amendment, and the full legislative scheme evince an intent to impose a mandatory requirement; (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance." Id., at 758-59, 104 A.3d 713.
We conclude that the foregoing factors, to the extent they are applicable, weigh decisively in favor of a conclusion that the endorsement requirement of § 52-593a(b) is directory rather than mandatory. First, the requirement is stated in affirmative terms, unaccompanied by negative language, and does not expressly render unavailable the extension of time allowed by subsection (a) in the event of noncompliance. See United Illuminating Co. v. New Haven , 240 Conn. 422, 465-66, 692 A.2d 742 (1997) ("if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be construed as directory" [internal quotation marks omitted] ); but cf.
**186 Butts v. Bysiewicz , 298 Conn. 665, 678-79, 5 A.3d 932 (2010) (construing statute providing that, if certificate of endorsement is not received by prescribed deadline, the "certificate shall be invalid," as creating mandatory deadline [internal quotation marks omitted] ). Next, we agree with the Appellate Court; see Doe v. West Hartford , supra, 168 Conn. App. at 378-79, 147 A.3d 1083 ; that subsection (a) embodies the substance of § 52-593a, i.e., the allowance of up to thirty additional days for service if process is delivered to a marshal close to, but not beyond, the expiration of the applicable statute of limitations, and that subsection (b) is a matter of convenience, specifically, *1138 the provision of a straight-forward method by which the timeliness of delivery may be ascertained. See Teresa T. v. Ragaglia , 272 Conn. 734, 746, 865 A.2d 428 (2005) (if "provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory" [internal quotation marks omitted] ).
As to the legislative history of § 52-593a, our research reveals that it consists of only a few stray comments by lawmakers that do not concern subsection (b) and, therefore, is unhelpful. Regarding the applicable legislative scheme, the placement of § 52-593a among a number of provisions that extend or toll statutes of limitations under various circumstances; see General Statutes §§ 52-590 through 52-595 ; underscores its remedial purpose and counsels that it should not be given an overly restrictive construction that would defeat its curative goal. Additionally, permitting a plaintiff to prove timely delivery of process to a marshal by means other than the statutorily directed endorsement would not result in an unjust windfall but, rather, assuming that timeliness could be shown by other evidence, simply would enable the plaintiff to take advantage of a protection that the legislature sought to provide to him, at no expense to the opposing party. Finally, although we agree with the defendants that ensuring that a marshal **187 fulfills the statutory endorsement requirement is, to some degree, within the control of a plaintiff, we nevertheless disagree that this circumstance is enough to overcome the other considerations weighing in favor of a conclusion that the endorsement requirement is directive.
Insofar as the defendants contend that a conclusion that § 52-593a(b) is directory rather than mandatory will render that provision "meaningless," we disagree. To the contrary, we expect that the vast majority of parties seeking the extension of time for service afforded by § 52-593a(a) will continue to comply with the endorsement requirement to avoid the expense and uncertainty attendant to proving compliance by alternative means. We further disagree that the difficulties of proof presented by this case, without more, are evidence that the legislature intended to make endorsement of the delivery date by the marshal mandatory. Those difficulties are as readily attributable to the defendants' choice to wait more than three years to challenge the timeliness of this action, during which time one witness died and the memories of others faded, as they are to the absence of an endorsement by the marshal.
For the foregoing reasons, we conclude that the Appellate Court properly determined that the endorsement requirement of § 52-593a(b) is directory rather than mandatory. Consequently, the defendants' claim that the absence of an endorsement on the return required summary judgment in their favor is without merit.
II
The defendants claim next that the Appellate Court improperly reversed the trial court's rendering of summary judgment in their favor because the plaintiff failed to submit admissible evidence that was adequate to **188 establish a genuine issue of material fact concerning the applicability of § 52-593a. Specifically, they claim, the evidence was insufficient to create a factual question as to whether process was delivered to Griffin within the three year limitation period. We disagree.
The following additional procedural history is relevant. As previously indicated, Spinella executed an affidavit averring that the summons and complaint were delivered to Griffin on May 20, 2010, and, thereafter, the defendants deposed Spinella *1139 to learn the facts and circumstances surrounding that delivery and the source of Spinella's knowledge.[10] The deposition, if credited, revealed the following salient points: (1) although the events in question had occurred more than four years prior, Spinella had a distinct recollection of them because the plaintiff had been an "enormously demanding" and memorable client, and Spinella considered the overall circumstances to be "extraordinary"; (2) Spinella's law office used Griffin exclusively for serving process in 2010, and there was a set routine whereby Griffin would be telephoned and the papers would be left on a particular counter for him to retrieve; (3) at the time Spinella prepared and executed the summons and complaint, which had required some last minute revisions, he was acutely aware that the statute of limitations for the plaintiff's claims was due to expire within a day or so, creating "a lot of concern" and urgency to get the papers to Griffin; (4) Spinella's office manager, whose work area was located near the counter on which documents were left for pickup, typically was responsible for telephoning Griffin to retrieve those documents when a matter was urgent, and Spinella had asked her to do so in this instance; (5) the **189 documents were placed on the counter for pickup by Griffin; (6) although Spinella was not present when Griffin picked up the summons and complaint, he requested, and later received, oral confirmation from his office staff, likely the office manager, that the documents had been retrieved; (7) thereafter, Spinella checked back and personally observed that the documents no longer were present on the counter; (8) Spinella subsequently spoke to Griffin, who also confirmed that the pickup had occurred; and (9) the office manager had died, making her unavailable to confirm Spinella's recollections of the events in question. Moreover, Griffin, at his deposition, had not testified about confirming with Spinella, after the fact, that he had retrieved the process from the counter on May 20, 2010.
The Appellate Court, after reviewing Spinella's deposition testimony, concluded that it sufficiently had raised a genuine issue of material fact as to whether process had been delivered to Griffin on May 20, 2010, as Spinella had attested.[11] Doe v. West Hartford , supra, 168 Conn. App. at 375, 147 A.3d 1083. The court discussed most of the foregoing circumstances in its opinion, but also indicated that, even absent consideration of the pickup confirmations that Spinella claimed he had received from third parties, the deposition evidence was sufficient to support a reasonable inference of a May 20, 2010 delivery. Id., at 375-76, 147 A.3d 1083.
The defendants claim that the Appellate Court improperly concluded that the admissible portions of Spinella's deposition testimony gave rise to a genuine issue of material fact as to the timeliness of this action. They argue first that the court should not have considered that testimony when ruling on their summary judgment **190 motions, because it was submitted solely for the purpose of supporting the motions to strike Spinella's affidavit as lacking in personal knowledge. Alternatively, the defendants contend that Spinella's *1140 testimony had no probative value because the trial court found it to be loose and equivocal, and, further, it was speculative and conjectural in that Spinella neither witnessed Griffin's retrieval of the process nor had a true recollection of that retrieval occurring on the specific date of May 20, 2010. Additionally, in the defendants' view, the evidence does not support an inference that delivery to Griffin was timely but, rather, supports the opposite inference, as the trial court reasoned. Finally, the defendants claim, to the extent that there were factual disputes over the applicability of the statute of limitations, it was for the trial court to resolve them.[12] The plaintiff, **191 in response, contends that the Appellate Court properly considered Spinella's deposition when reviewing the summary judgment ruling, and that the contents of that deposition were adequate to create a genuine issue of material fact as to the timeliness of this action. We agree with the plaintiff.[13]
Our review of the trial court's summary judgment rulings is plenary; see *1141 Romprey v. Safeco Ins. Co. of America , 310 Conn. 304, 313, 77 A.3d 726 (2013) ; and the general principles governing those rulings are well established. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.... The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ... and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.... A material fact ... [is] a fact which will make a difference in the **192 result of the case." (Internal quotation marks omitted.) Id., at 312-13, 77 A.3d 726.
A summary judgment motion is an appropriate vehicle by which to challenge the timeliness of an action. See, e.g., id., at 313, 77 A.3d 726 ; see also Grey v. Stamford Health System, Inc. , 282 Conn. 745, 750, 924 A.2d 831 (2007). Typically, "in the context of a motion for summary judgment based on a statute of limitations special defense, a defendant ... meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period." Romprey v. Safeco Ins. Co. of America , supra, 310 Conn. at 321, 77 A.3d 726. Then, if the plaintiff claims the benefit of a provision that operates to extend the limitation period, "the burden ... shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." Id. In these circumstances, it is "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact [as to the timeliness of the action] exists." (Internal quotation marks omitted.) Iacurci v. Sax , 313 Conn. 786, 799, 99 A.3d 1145 (2014). Consistent with this framework, once the defendants established that they had been served beyond the three year limitation period applicable to the claims against them, the burden shifted to the plaintiff to produce evidence sufficient to raise the factual issue of whether the summons and complaint had been delivered to Griffin by May 22, 2010, the last day before the statute of limitations expired, so as to make available the extra thirty days for service permitted by § 52-593a that would render the action timely. We conclude that the plaintiff satisfied that burden.
To begin, we reject the defendants' claim that Spinella's deposition was not part of the record that the Appellate Court should have considered when **193 reviewing the trial court's rulings on their summary judgment motions because the defendants submitted that deposition only in support of their motion to strike Spinella's affidavit in opposition to summary judgment. As a factual matter, the defendants' claim is incorrect. Specifically, the document to which the transcript of Spinella's deposition was appended was both a motion to strike and a memorandum in support of summary judgment. See footnote 6 of this opinion. Nowhere in that document did the defendants purport to limit the use of the transcript, and, in any event, it is not clear that they would be warranted in doing so. See Practice Book § 13-31(a) (providing that "any [admissible] part or all of a deposition" submitted in court proceedings "may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof"). Additionally, it is clear from the trial court's articulation of its rulings on the summary judgment motions, wherein the court extensively references and evaluates the deposition testimony, that that *1142 court did in fact consider it, although it ultimately found it not compelling. Because the deposition transcript clearly was before the trial court when it ruled on the summary judgment motions, and it informed that court's rulings, the defendants' contention that it should not have been considered in connection with the review of those rulings is meritless.
Next, we agree with the plaintiff that the trial court, in granting the defendants' summary judgment motions, was inordinately focused on whether he could show that process had been delivered to Griffin on the specific date of May 20, 2010. Although that was a proper inquiry for purposes of deciding the motion to strike, in which Spinella had attested to that particular day as the date of delivery, the question implicated by the motions for summary judgment was more general, namely, whether there was evidence that process had **194 been delivered to Griffin at any time prior to the expiration of the earliest possible statute of limitations on May 22, 2010. Regardless of whether Spinella, four years after the events in question, had a recollection of the specific date on which the events had occurred, he claimed vehemently that he recalled the date to be "a day or so" prior to the impending expiration of the statute of limitations, a circumstance of which, at the time, he was acutely aware, and that that awareness had led to a sense of urgency in his office to get the process to Griffin. This testimony, if credited, would lend support to a finding that delivery had occurred in a timely fashion, regardless of whether Spinella definitively could identify the specific date of delivery. Accordingly, we reject the defendants' contention that the testimony was too speculative to defeat summary judgment.
Additionally, we disagree with the defendants and the trial court that Spinella's deposition testimony was insufficient to create a genuine issue of material fact as to the timely delivery of process because Spinella did not personally call Griffin or witness him retrieving the documents from the counter on which, Spinella testified, they had been left for pickup "a day or so" before the statute of limitations was set to expire. When deposed, Spinella explained the routine that his office typically followed when it urgently needed Griffin to pick up documents for service, and he indicated, by citing facts within his personal knowledge, that routine had been set in motion. Specifically, he knew that the summons and complaint, which were dated May 19, 2010, had been placed on the counter from which pickup by Griffin typically occurred, and that he had instructed his office manager to call Griffin to retrieve them.
Spinella's statements, if believed by a fact finder, are suggestive of an inference that Griffin, who regularly **195 served papers for Spinella's office, was summoned by the officer manager as usual and, thereafter, arrived to pick up the documents as requested. "Testimony as to the habit or practice of doing a certain thing in a certain way is evidence of what actually occurred under similar circumstances or conditions.... Evidence of a regular practice permits an inference that the practice was followed on a given occasion." (Emphasis in original; internal quotation marks omitted.) Birkhamshaw v. Socha , 156 Conn. App. 453, 472, 115 A.3d 1, cert. denied, 317 Conn. 913, 116 A.3d 812 (2015) ; see also Conn. Code Evid. § 4-6 ("[e]vidence of ... the routine practice of an organization is admissible to prove that the conduct of ... the organization on a particular occasion was in conformity with the ... routine practice"). Moreover, Spinella's testimony that he later returned to the counter and saw that the documents no *1143 longer were there is additional, albeit circumstantial, evidence that Griffin had come to Spinella's office and retrieved them.[14]
Relatedly, we disagree that Spinella's deposition testimony lacks probative value and, therefore, cannot defeat summary judgment, because that testimony is, at times, "loose and equivocal." "The probative value of evidence is its tendency to establish the proposition that it is offered to prove." State v. Jeffrey , 220 Conn. 698, 709, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S.Ct. 3041, 120 L.Ed.2d 909 (1992). Evidence **196 is probative if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1 ; see also State v. Prioleau , 235 Conn. 274, 305, 664 A.2d 743 (1995) (to be probative, "[a]ll that is required is that the evidence tend to support a relevant fact even to a slight degree" [emphasis in original; internal quotation marks omitted] ).
We have no trouble concluding that Spinella's deposition testimony satisfies this standard. As previously indicated, Spinella was asked to testify about matters that had occurred more than four years earlier and, while unable to recall certain details with precision, he claimed to remember the broader outline of the events in question due to certain memorable aspects of the case. Although he had no real memory of specific dates, he consistently recalled that the pertinent events had occurred "a day or so" before the statutory deadline. Regardless of the generality of this averment, if it is believed, it does tend, to some degree, to support a finding of timely delivery. Moreover, to the extent Spinella expressed himself in uncertain fashion over the course of his deposition, that circumstance would go to the weight of his testimony, but does not deprive it of all probative value.
By dismissing the testimony out of hand, the trial court, in essence, made an improper credibility determination when ruling on a summary judgment motion. It is fundamental that, when ruling on such a motion, a trial court is limited to determining whether a material factual issue exists; it may not then proceed to try that issue on the summary judgment record, if the issue does exist. Batick v. Seymour , 186 Conn. 632, 647, 443 A.2d 471 (1982) ; Dowling v. Kielak , 160 Conn. 14, 16-17, 273 A.2d 716 (1970) ;
**197 Best Friends Pet Care, Inc. v. Design Learned, Inc. , 77 Conn. App. 167, 176, 823 A.2d 329 (2003). When deciding a summary judgment motion, a trial court may not resolve credibility questions raised by affidavits or deposition testimony submitted by the parties. Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 107, 639 A.2d 507 (1994) ; Town Bank & Trust Co. v. Benson , 176 Conn. 304, 308-309, 407 A.2d 971 (1978) ; Straw Pond Associates, LLC v. Fitzpatrick, Mariano & Santos, P.C. , 167 Conn. App. 691, 710, 145 A.3d 292, cert. denied, 323 Conn. 930, 150 A.3d 231 (2016). "It is only when the witnesses are present and subject to cross-examination that their *1144 credibility and the weight to be given to their testimony can be appraised." (Internal quotation marks omitted.) Town Bank & Trust Co. v. Benson , supra, at 309, 407 A.2d 971.
Finally, we are not persuaded by the trial court's reasoning that the evidence before it did not support an inference that delivery to Griffin was timely but, rather, supported the opposite inference. Regarding this claim, the trial court, in its articulation, observed that Griffin did not serve the seventeen defendants until June 9, 2010, twenty days after Griffin purportedly had retrieved the process from Spinella's office. In the court's view, this delay was inconsistent with Spinella's testimony that there was an urgent need to comply with the statute of limitations that he was aware was soon to expire. According to the court, service on this date was "not indicative ... of an overwhelming concern" with an impending expiration date, but, rather, "highly unusual, and unexplained." The court concluded that the cited circumstance "directly undercuts the inference" of a May 20, 2010 delivery date.
Suffice it to say, any number of competing inferences may be drawn from the fact that Griffin served the defendants on June 9, 2010, a day that, if § 52-593a applies, as the plaintiff contends, still was ten days shy of the expiration of the extended limitation period. When the evidence in a summary judgment record reasonably **198 is susceptible to competing inferences, it is improper for a trial court, in ruling on the summary judgment motion, to choose among those inferences. Suarez v. Dickmont Plastics Corp. , supra, 229 Conn. at 111, 639 A.2d 507 ; Dacey v. Connecticut Bar Assn. , 170 Conn. 520, 540, 368 A.2d 125 (1976) ; United Oil Co. v. Urban Redevelopment Commission , 158 Conn. 364, 379, 260 A.2d 596 (1969). Here, the court should have recognized as much and deferred to the ultimate fact finder the decision as to which inference was the most plausible one after a full evidentiary hearing could be held.[15]
For all of the foregoing reasons, we disagree with the defendants that the admissible evidence properly before the trial court was insufficient to create a genuine issue of material fact regarding the timeliness of service. Accordingly, the Appellate Court's conclusion that the trial court improperly rendered summary judgment in the defendants' favor was correct.
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

General Statutes § 52-593a provides: "(a) Except in the case of an appeal from an administrative agency governed by section 4-183, a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery.
"(b) In any such case, the officer making service shall endorse under oath on such officer's return the date of delivery of the process to such officer for service in accordance with this section."

"The plaintiff was granted permission to proceed under a pseudonym due to the nature of the allegations in the complaint." Doe v. West Hartford , 168 Conn. App. 354, 357 n.1, 147 A.3d 1083 (2016).

The medical defendants are Dale J. Wallington and Resilience Health Care, L.L.C. The town defendants are the town of West Hartford, Chief of Police James Strillacci, and Gino Giansanti, Kimberly Sullivan, Sean Walmsley, John Silano, Michael Camillieri and Donald Melanson, members of the town's police department. The hospital defendants are Hartford Hospital, the Institute of Living, Radhika Mehendru, Carl Washburn and Theodore Mucha.

Typically, an action is "commenced," for purposes of determining compliance with a statute of limitations, when the defendant is served with a summons and complaint. Chestnut Point Realty, LLC v. East Windsor , 324 Conn. 528, 540, 153 A.3d 636 (2017).

In the trial court's view, the affidavit was not so " 'palpably false' " as to warrant its striking. See Perri v. Cioffi , 141 Conn. 675, 680, 109 A.2d 355 (1954) ; Zbras v. St. Vincent's Medical Center , 91 Conn. App. 289, 293, 880 A.2d 999, cert. denied, 276 Conn. 910, 886 A.2d 424 (2005).

Each group of defendants filed a single document that was captioned as both a motion to strike Spinella's affidavit and a supplemental memorandum in support of summary judgment. The hospital defendants appended the deposition transcript, and the town defendants, in their filing, adopted the arguments presented by the hospital defendants.

The defendants had raised this statutory interpretation claim before the trial court, but that court ultimately found it unnecessary to resolve.

We granted the defendants' petition for certification to appeal, limited to the following questions:
"1. Did the Appellate Court properly reverse the trial court's grant of the defendants' motion for summary judgment on the basis of its determination that a genuine issue of material fact existed with respect to the availability of the savings statute ... § 52-593a ?
"2. Did the Appellate Court properly conclude that § 52-593a is available to save a cause of action despite the failure of the serving officer to endorse on the officer's return the date of delivery of the process to such officer pursuant to § 52-593a(b) ?" Doe v. West Hartford , 323 Conn. 936, 936-37, 151 A.3d 384 (2016).
In this opinion, we have reversed the ordering of the defendants' claims because it seems more logical to address first the question of what method of proof is required before turning to the question of whether the evidence established that service was timely effectuated.

Contrary to the defendants' contention, the legislature's passage of § 1-2z does not preclude a reviewing court from considering prior judicial interpretations of a statute that are not based on the plain meaning rule, when the case law predates the enactment of § 1-2z. See New England Road, Inc. v. Planning & Zoning Commission , 308 Conn. 180, 186, 61 A.3d 505 (2013) ; Hummel v. Marten Transport, Ltd. , 282 Conn. 477, 501, 923 A.2d 657 (2007). Accordingly, the Appellate Court committed no impropriety when it relied on its own directly applicable precedent to construe § 52-593a(b). See Doe v. West Hartford , supra, 168 Conn. App. at 378-79, 147 A.3d 1083 (discussing Appellate Court case relying on long established precedent).

The relevant portions of Spinella's deposition are reproduced verbatim in the Appellate Court's opinion. See Doe v. West Hartford , supra, 168 Conn. App. at 368-75, 147 A.3d 1083. In this opinion, for purposes of brevity, we will describe the content of those excerpts more generally.

The Appellate Court assumed, without deciding, that the trial court properly had stricken Spinella's affidavit, and relied solely on his deposition testimony to determine whether summary judgment was appropriate. Doe v. West Hartford , supra, 168 Conn. App. at 375, 147 A.3d 1083.

The defendants also claim that the Appellate Court, in concluding that summary judgment was not warranted, improperly relied on portions of Spinella's deposition testimony that constituted inadmissible hearsay evidence, namely, the confirmations of delivery that Spinella purportedly had received from third parties. They contend that, by considering those confirmations, the Appellate Court, in effect, improperly revisited and reversed the evidentiary rulings made by the trial court in the course of deciding the motions to strike and for summary judgment. In connection with this claim, the parties contend that exceptions to the general rule that hearsay evidence is inadmissible either do, or do not, apply.
It is well established under our law that the evidence submitted in support of, or in opposition to, summary judgment must be admissible evidence, and that hearsay testimony generally is incompetent for this purpose. See Great Country Bank v. Pastore , 241 Conn. 423, 436-37, 696 A.2d 1254 (1997) ; Dowling v. Kielak , 160 Conn. 14, 18, 273 A.2d 716 (1970) ; Nash v. Stevens , 144 Conn. App. 1, 15-16, 71 A.3d 635, cert. denied, 310 Conn. 915, 76 A.3d 628 (2013) ; see also Practice Book § 17-46. The Appellate Court acknowledged, in a footnote, that the third-party confirmations in this matter "may be considered inadmissible hearsay (barring any exception)" but reasoned that "it was the defendants who submitted Spinella's deposition and no objection was made on hearsay grounds." Doe v. West Hartford , supra, 168 Conn. App. at 376 n.15, 147 A.3d 1083.
We agree with the defendants that, regardless of the considerations cited by the Appellate Court, the trial court did affirmatively rule that the third-party confirmations were inadmissible hearsay, and the plaintiff did not challenge those evidentiary rulings on appeal. Accordingly, the Appellate Court should not have considered those portions of Spinella's deposition testimony when determining whether summary judgment was proper. We conclude, nevertheless, that, to the extent that the Appellate Court did so, that impropriety essentially was harmless. Specifically, as we explain hereinafter, we agree with that court that, even absent consideration of the portions of Spinella's deposition that the trial court held were inadmissible hearsay, there was enough evidence in the remaining portions of the deposition to create a genuine issue of material fact regarding whether process had been delivered to Griffin on May 20, 2010. Although the defendants suggest, throughout their brief, that the trial court determined that the entirety of Spinella's deposition testimony, for various reasons, was inadmissible, our review of the court's decisions discloses that that ruling was limited to the portions of the deposition that constituted hearsay.

Consequently, we need not reach the plaintiff's claims that certain additional evidence also contributed to create a genuine issue of material fact. That evidence was not considered by the Appellate Court, and the plaintiff did not submit it to the trial court until he filed a motion for reconsideration of the summary judgment ruling, a motion that the trial court denied. The plaintiff challenged that ruling on appeal, but the Appellate Court did not consider that challenge. Doe v. West Hartford , supra, 168 Conn. App. at 359 n.5, 147 A.3d 1083.

We note in this regard that "[t]he inferences drawn from circumstantial evidence are distinct from conjecture and surmise. Circumstantial evidence requires that the trier [find] that the facts from which the trier is asked to draw the inference are proven and that the inference is not only logical and reasonable but strong enough so that it can be found that it is more probable than otherwise that the fact to be inferred is true.... In contrast, impermissible conjecture and surmise would require a jury to infer a new set of facts from unproven or nonexistent facts." (Citation omitted; internal quotation marks omitted.) Rawls v. Progressive Northern Ins. Co. , 310 Conn. 768, 777 n.5, 83 A.3d 576 (2014).

We reject the defendants' assertion that, to the extent there were factual disputes over the applicability of the statute of limitations, they were for the trial court, and not a jury, to resolve. Even if we assume, without deciding, that this assertion is true, the trial court most assuredly is not empowered to resolve factual disputes when ruling on a summary judgment motion . Rather, if material factual disputes are identified, they should be addressed more fully in a nonsummary proceeding.